[This opinion has been published in *Ohio Official Reports* at 68 Ohio St.3d 240.]

HYDE, APPELLANT, *v.* REYNOLDSVILLE CASKET COMPANY ET AL., APPELLEES.

[Cite as *Hyde v. Reynoldsville Casket Co.*, 1994-Ohio-67.]

*Statutes of limitations—Recent United States Supreme Court decision may not be retroactively applied to bar claims in state courts which had accrued prior to the announcement of that decision—Section 16, Article I, Ohio Constitution, applied.*

*Bendix Autolite  Corp. v. Midwesco Enterprises, Inc.* (1988), 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d. 896, may not be retroactively applied to bar claims in state courts which had accrued prior to the announcement of that decision. (Section 16, Article I, Ohio Constitution, applied.)

(No. 92-1682—Submitted September 28, 1993—Decided February 9, 1994.)

APPEAL from the Court of Appeals for Ashtabula County, No. 91-A-1660.

———————————

{¶ 1} On March 5, 1984, appellant Carol L. Hyde was injured in a traffic accident in Ashtabula County, Ohio, allegedly caused by the negligence of John M. Blosh while he was operating a vehicle owned by the Reynoldsville Casket Company ("RCC").

{¶ 2} It is not disputed that RCC is a Pennsylvania corporation which is not licensed to do business in Ohio and has not appointed an agent to receive service of process in the state.

{¶ 3} On August 11, 1987, Hyde filed a complaint in the Court of Common Pleas of Ashtabula County.  The complaint alleged that Blosh had negligently caused Hyde's injuries and contended that because "Blosh's actions were in the scope and course of his employment with the [Reynoldsville] Casket Co.," RCC was also liable for those injuries.

**{¶ 4}** On February 8, 1988, RCC and Blosh then filed a motion to dismiss, claiming that the complaint was barred by Ohio's statute of limitations. The trial court granted the motion, and the court of appeals affirmed the trial court's decision.

**{¶ 5}** This cause is now before this court pursuant to the allowance of a motion to certify the record.

_____

*David J. Eardley*, for appellant.

*William E. Riedel*, for appellees.

*Williams, Jilek*, *Lafferty & Gallagher Co., L.P.A.*, and *Dale M. Grocki*, urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

*Brown & Szaller Co., L.P.A.*, and *James F. Szaller*, urging reversal *amicus curiae*, Brown & Szaller Co., L.P.A.

*Spangenberg, Shibley, Traci, Lancione & Liber*, *Robert A. Marcis* and *Cathleen M. Bolek*, urging reversal for *amicus curiae*, Spangenberg, Shibley, Traci, Lancione & Liber.

*Arter & Hadden*, *Irene C. Keyse-Walker* and *Robert C. Tucker*, urging affirmance for *amicus curiae*, Dalkon Shield Claimants Trust.[1]

_____

**PFEIFER, J.**

**{¶ 6}** This court is asked to determine whether the United States Supreme Court decision in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.* (1988), 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896, holding the Ohio tolling statute, R.C. 2305.15(A), to be unconstitutional, should be retroactively applied to Hyde's complaint filed against RCC and Blosh. For the following reasons, we determine that *Bendix* may not be retroactively applied.

---

1. The motion of the Dalkon Shield Claimants Trust for leave to file a brief *amicus curiae* is hereby granted.

**{¶ 7}** Unless Hyde may utilize the tolling provision in R.C. 2305.15(A), her claim is precluded by the applicable statute of limitations. In Ohio, the period of limitations for a personal injury negligence action is two years. R.C. 2305.10. Hyde filed her complaint seventeen months after this two-year period had expired. At the time of the accident, R.C. 2305.15, now 2305.15(A), tolled the limitations period for claims against out-of-state defendants by providing:

"When a cause of action accrues against a person, if he is out of the state, or has absconded, or conceals himself, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14 *** of the Revised Code, does not begin to run until he comes into the state or while he is so absconded or concealed. After the cause of action accrues if he departs from the state, or absconds or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought." 129 Ohio Laws 177.

**{¶ 8}** It is not alleged that RCC re-entered the state of Ohio after the accident of March 5, 1984. Pursuant to R.C. 2305.15, the limitations period for Hyde to bring an action against RCC was tolled, and had not elapsed when Hyde filed her complaint. See *Seeley v. Expert, Inc.* (1971), 26 Ohio St.2d 61, 55 O.O.2d 120, 269 N.E.2d 121.

**{¶ 9}** Nearly one year after Hyde filed her complaint, the United States Supreme Court determined that the tolling provision in R.C. 2305.15 violated the Commerce Clause of the United States Constitution when applied to out-of-state entities. *Bendix*, *supra*. In its opinion, the *Bendix* court specifically declined to determine whether its ruling should be applied prospectively only. *Id.*, 486 U.S. at 805, 108 S.Ct. at 2222-2223, 100 L.Ed.2d at 905.

**{¶ 10}** We are now confronted with the task of determining whether the *Bendix* decision is to be applied retroactively. Until recently, *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, provided the three-part

test to determine whether courts should retroactively apply a decision of the United States Supreme Court when the result is to shorten limitations periods of cases accrued before the decision was announced. However, in *Harper v. Virginia Dept. of Taxation* (1993), 509 U.S. __, 113 S.Ct. 2510, 125 L.Ed.2d 74, the United States Supreme Court announced a new test concerning the retroactive application of decisions. It is unclear whether *Harper* was intended to replace *Chevron*, or to supplement it.

I

{¶ 11} If *Chevron* remains good law today, then that case—and not Harper—provides the proper test to apply to the present case. The present case is closer to *Chevron* than to *Harper*. *Harper* determined that a United States Supreme Court decision striking down a Michigan taxing practice as unconstitutional must be retroactively applied to Virginia taxpayers taxed under a similar statute. *Chevron* discusses whether a ruling which shortens a limitations period should be retroactively applied.

{¶ 12} *Chevron* sets forth the following three-pronged test to determine when a holding of the United States Supreme Court should not be retroactively applied:

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, *** or by deciding an issue of first impression whose resolution was not clearly foreshadowed ***. Second, it has been stressed that 'we must *** weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *** Finally, we have weighed the inequity imposed by retroactive application, '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for

avoiding the "injustice or hardship" by a holding of nonretroactivity.'" 404 U.S. at 106-107, 92 S.Ct. at 355, 30 L.Ed.2d at 306.

{¶ 13} The facts in the present case pass the three-pronged *Chevron* test for nonretroactivity. The United States Supreme Court's opinion in *Bendix*, *supra*, was the first time that any court of binding authority in Ohio's state courts had ruled R.C. 2305.15 unconstitutional. When Hyde was injured, she could not have foreseen that R.C. 2305.15 would be struck down four years later. "The most [s]he could do was to rely on the law as it then was." *Chevron*, 404 U.S. at 107, 92 S.Ct. at 356, 30 L.Ed.2d at 306.

{¶ 14} Because of the factual similarities between the present case and *Chevron*, it is unnecessary to discuss the other two prongs of the *Chevron* test. The *Chevron* court held that the retroactive application of a rule shortening the limitations period in a tort case fulfilled the last two requirements of the test for nonretroactivity. Because all three requirements of the *Chevron* test are likewise fulfilled in this case, we determine that *Bendix* cannot be retroactively applied.

II

{¶ 15} Even if the *Chevron* test has been replaced by *Harper*, the retroactive application of *Bendix* remains impermissible.

{¶ 16} In *Harper*, the United States Supreme Court determined that its prior decision in *Davis v. Michigan Dept. of Treasury* (1989), 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891, should be retroactively applied. The *Davis* decision declared that it was unconstitutional for the state of Michigan to tax retirement benefits paid by the federal government when that state exempts retirement benefits paid by the state or its political subdivisions. The state of Virginia, in *Harper*, argued that *Davis* should not be retroactively applied.

{¶ 17} The United States Supreme Court rejected Virginia's argument, holding that *Davis* must be retroactively applied. However, the Supreme Court declined to enter judgment for the taxpayers "because federal law does not

necessarily entitle them to a refund." *Harper*, *supra*, 509 U.S. at __, 113 S.Ct. at 2519, 125 L.Ed.2d at 88. The *Harper* court went on to note that a state, when retroactively applying a Supreme Court decision, "'retains flexibility'" in fashioning appropriate relief. *Id*. at __, 113 S.Ct. at 2518, 125 L.Ed.2d at 89, quoting *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco* (1990), 496 U.S. 18, 39-40, 110 S.Ct. 2238, 2252, 110 L.Ed.2d 17, 38. *Harper* allows state courts to tailor their own remedies as they determine the manner in which a Supreme Court opinion is to be retroactively applied.

{¶ 18} The Ohio Constitution prohibits us from applying *Bendix* to those claims already accrued when that decision was announced by the United States Supreme Court. If we were to retroactively apply the holding in *Bendix*, we would extinguish the claims of injured persons who had justifiably relied on R.C. 2305.15, because of a subsequent determination by the United States Supreme Court that they could not have foreseen. Such an application would clearly violate the rights of Ohioans to obtain a meaningful opportunity to bring their claims in Ohio's courts. The retroactive application of *Bendix* would violate the rights afforded by Section 16, Article I of the Ohio Constitution, which provides in part:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

{¶ 19} In *Hardy v. VerMeulen* (1987), 32 Ohio St. 3d 45, 512 N.E.2d 626, this court held that "R.C. 2305.11(B), as applied to bar the claims of medical malpractice plaintiffs who did not know or could not reasonably have known of their injuries, violates the right-to-a-remedy provision of Section 16, Article I of the Ohio Constitution." *Id.* at syllabus.

{¶ 20} In *Burgess v. Eli Lilly & Co.* (1993), 66 Ohio St.3d 59, 62, 609 N.E.2d 140, 142, we proclaimed that when the Ohio Constitution speaks of remedy

6

for injury to person, property or reputation, it requires an opportunity for redress that is granted at a meaningful time and in a meaningful manner.

{¶ 21} It is hard to imagine a right to a remedy less meaningful than one which, while valid at the time an individual is injured, is subsequently revoked. This is precisely the outcome that a retroactive application of *Bendix* dictates. In not filing her complaint against RCC until 1987, Hyde relied on Ohio's tolling statute, R.C. 2305.15, and the most recent interpretation of that statute by the court of appeals in her appellate district, *May v. Leidli* (1986), 32 Ohio App.3d 36, 513 N.E.2d 1347. No court of binding precedent in Ohio had ever ruled that R.C. 2305.15(A) was unconstitutional. Nearly one year after Hyde's complaint was filed, *Bendix* was announced.

{¶ 22} At the time Hyde was injured, she possessed a state constitutional civil right to file a lawsuit relying on R.C. 2395.15(A). This right conflicts with a federal rule of decision, which requires the retroactive application of federal rules of law such as the *Bendix* decision.

{¶ 23} We find that when there is a conflict between a state constitutional civil right and a federal rule of decision that is not rooted in the United States Constitution, such as retroactivity, the state civil right prevails. As we noted in *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163, paragraph one of the syllabus:

"The Ohio Constitution is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups."

**{¶ 24}** In this case, the federal rule of decision -- retroactivity -- is not rooted in the United States Constitution. The United States Supreme Court may strike down provisions in the Ohio Constitution when they are unconstitutional, but may not invalidate them simply because they conflict with a court-created doctrine of uniformity, such as the requirement that decisions be retroactively applied.

**{¶ 25}** This conflict between the federal rule of retroactivity and Ohio's right to a remedy must be resolved in favor of the state constitutional civil right.

**{¶ 26}** Our decision today does not contravene the federal constitutional analysis in *Bendix*, but, instead, allows Section 16, Article I of the Ohio Constitution and the Commerce Clause of the federal Constitution to co-exist.

**{¶ 27}** Whether or not the *Chevron* test remains good law today, we hold that *Bendix* may not be retroactively applied to bar claims which had accrued prior to the announcement of that decision.

**{¶ 28}** Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings.

*Judgment reversed*

*and cause remanded.*

A.W. SWEENEY, DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., and WRIGHT, J., dissent.

———————————

**WRIGHT, J., dissenting.**

**{¶ 29}** The issue in this case is whether the decision in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.* (1988), 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896, applies retroactively to bar appellant's personal injury claim. The majority answers this question with a confusing opinion containing an assortment of retroactivity doctrine. Present in the opinion are two rules of federal law, only one of which is actually described, and one brand new and unsupportable rule of state law.

I

**{¶ 30}** The majority states in Part I of its opinion that the Bendix decision cannot be given retroactive effect under the three-pronged test set forth in *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296.[2] But the majority also recognizes that the test from *Chevron* may have been replaced by a new rule of retroactivity in *Harper v. Virginia Dept. of Taxation* (1993), 509 U.S. , 113 S.Ct. 2510, 125 L.Ed.2d 74. Then without even so much as describing the new rule from *Harper* (*i.e.*, the holding), the majority goes on to state the correct but wholly irrelevant fact that the plaintiffs in *Harper* were not necessarily entitled to a refund of the taxes and that the state of Virginia retained some flexibility in fashioning appropriate relief. Based on this discussion of the appropriate remedy for the plaintiffs in *Harper*, the majority makes the extraordinary statement that "*Harper* allows state courts to tailor their own remedies as they determine the manner in which a Supreme Court opinion is to be retroactively applied." The majority then proceeds to use this statement as the foundation for its new state law rule of retroactivity.

**{¶ 31}** Such a statement would not merit much attention were it not for the fact that the remainder of the majority's opinion rests in its entirety on this "new rule." It is indeed curious that a discussion of "tailoring a remedy" has even surfaced in this case. After all, this case has not yet proceeded beyond the pleading stage. No trial has been held to determine whether liability exists at all, and a finding of liability must always precede any attempt to tailor a remedy. The court's

---

2. The majority actually makes no serious effort to apply this test. The majority's effort is limited to a three-sentence analysis of prong one and a one-sentence dismissal of the remaining two prongs, concluding that this case and the *Chevron* case are so factually similar that any discussion of the remainder of the test is unnecessary. It appears from this casual treatment of the test from *Chevron* that the majority intends for its decision to rest entirely upon the state grounds announced in Part II of its opinion.

discussion of a remedy in *Harper* arose only because the court had *already decided the liability issue*. Of course, that decision has not been made in this case.

{¶ 32} Moreover, the question of an appropriate remedy for the plaintiffs in Harper arose only because the plaintiffs sought a refund of taxes, and, as the court noted, federal law does not necessarily entitle them to a refund. *Id.*, 509 U.S. at __, 113 S.Ct. at 2519, 125 L.Ed.2d at 88. Instead, the court held that the state of Virginia could choose any relief it wished so long as that relief was "'consistent with federal due process principles.'" *Id.*, quoting *Am. Trucking Assns., Inc. v. Smith* (1990), 496 U.S. 167, 181, 110 S.Ct. 2323, 2332, 110 L.Ed.2d 148, 161. One commentator has suggested that Virginia could impose retroactive taxes on state retirees, along with retroactive pension increases to offset the resulting tax liability. See Rakowski, *Harper* and Retroactive Remedies: Why States' Fears are Exaggerated (1993), 59 Tax Notes 555, 558-559. No one has suggested, however, that states use the remedy issue as a way to avoid application of the retroactivity rule from *Harper*, which is precisely what the majority accomplishes with its ruling.

{¶ 33} What is absent from the majority's opinion is *any* discussion of the United States Supreme Court opinions which unequivocally state that the retroactivity of constitutional decisions by the United States Supreme Court is purely a matter of federal law. At least three recent opinions make this point clear. Justice O'Connor stated in the court's plurality opinion in *Am. Trucking Assns., Inc. v. Smith*, *supra*, 496 U.S. at 177, 110 S.Ct. at 2330, 110 L.Ed.2d at 159, that "[t]he determination whether a constitutional decision of this Court is retroactive—that is, whether the decision applies to conduct or events that occurred before the date of the decision—*is a matter of federal law*." (Emphasis added.) Quoting this language, the court in *Ashland Oil, Inc. v. Caryl* (1990), 497 U.S. 916, 918, 110 S.Ct. 3202, 3204, 111 L.Ed.2d 734, 737, refused to apply the West Virginia Supreme Court's state-law criteria for retroactivity, stating instead that the court

10

must examine whether to give retroactive effect to a constitutionally based decision "in light of *our* nonretroactivity doctrine." (Emphasis added.)

{¶ 34} Finally, the Virginia Supreme Court in *Harper* had attempted to deny retrospective effect to the United States Supreme Court's decision in *Davis v. Michigan Dept. of Treasury* (1989), 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891, by resting its judgment on "independent and adequate" state grounds. The United States Supreme Court rebuffed the Virginia court's effort at avoiding the application of federal rules of retroactivity by stating:

"The Supremacy Clause, U.S. Const., Art. VI, cl. 2, does not allow federal retroactivity doctrine to be supplanted by the invocation of a contrary approach to retroactivity under state law. Whatever freedom state courts may enjoy to limit the retroactive operation of their own interpretations of state law *** cannot extend to their interpretations of federal law." *Id.*, 509 U.S. at __, 113 S.Ct. at 2519, 125 L.Ed.2d at 88.

{¶ 35} However stated, it is clear that federal law controls the issue before us. The majority cites *no* authority for its assertion in Part II of its opinion that a conflict between a state constitutional civil right and a federal rule of decision that is not rooted in the United States Constitution must be resolved in favor of the state civil right. Commentators who have examined the issue would disagree. The federal rule of retroactivity—called a federal rule of decision by the majority—is not, as the majority correctly points out, rooted in the Constitution. See *Solem v. Stumes* (1984), 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579, 586 ("retroactive application [of judicial decisions] is not compelled, constitutionally or otherwise"). Instead it may be described as a federal common-law rule. See Field, Sources of Law: The Scope of Federal Common Law (1986), 99 Harv.L.Rev. 883, 890 (defining "federal common law" as "any rule of federal law created by a court *** when the substance of that rule is not clearly suggested by federal enactments— constitutional or congressional" [emphasis deleted]). Regardless of its origin,

however, federal common law is still "law" within the meaning of the Supremacy Clause and is binding on state court judges. *Id.* at 897 and fn. 64. For this reason, and because the statements by the Supreme Court in the above-mentioned cases directly contradict the majority's assertion, I believe that in this case we cannot apply a state rule of retroactivity. We are bound by the Supremacy Clause of the United States Constitution to apply federal law, even if we believe the application of state law would produce a more palatable result.

{¶ 36} The strict rule of retroactivity in the civil context announced by the court in *Harper* is as follows: "[T]his Court's application of a rule of federal law to the parties before the Court requires *every court* to give retroactive effect to that decision." (Emphasis added.) Id., 509 U.S. at __, 113 S.Ct. at 2513, 125 L.Ed.2d at 81. I do agree with the majority that there is a serious question as to whether *Chevron* remains good law after the decision in *Harper*. The court in *Harper* did not analyze the retroactivity question under *Chevron* but instead created a rule of strict retroactivity similar to the rule of retroactivity in the criminal context as set forth by the court in *Griffith v. Kentucky* (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649. The *Harper* court did state, however, that the normal rule of retroactive application of its decisions must be followed "[w]hen this Court does not 'reserve the question whether its holding should be applied to the parties before it[.]'" *Id.*, 509 U.S. at __, 113 S.Ct. at 2518, 125 L.Ed.2d at 86-87, quoting *James B. Beam Distilling Co. v. Georgia* (1991), 501 U.S. __, __, 111 S.Ct. 2439, 2445, 115 L.Ed.2d 481, 490. Thus, at best it seems that *Chevron* remains good law only when the court reserves the question of retroactivity.

{¶ 37} The court in *Bendix* did not reserve the question of retroactivity. Instead the court applied the decision to the parties before it by affirming the dismissal of the plaintiff's cause of action. *Bendix*, 486 U.S. at 895, 108 S.Ct. at 2222-2223, 100 L.Ed.2d at 905. Therefore, under the rule announced in *Harper*, we must give retroactive effect to the *Bendix* decision. Appellant is thus prohibited

from using the unconstitutional tolling provision, former R.C. 2305.15, and her claim, filed more than three and one-half years after her accident, is barred by the two-year statute of limitations for personal injury actions.  See R.C. 2305.10.

## II

{¶ 38} I quite agree with the majority that the Ohio Constitution is a "document of independent force" and that we therefore need not always proceed in lock-step fashion with the United States Supreme Court on constitutional matters. And if this case involved individual rights or civil liberties, areas in which the United States Constitution merely sets a floor for our decisions, I might feel inclined to hold that the Ohio Constitution can form the basis for our opinion.  But this case deals with the question of whether to give retroactive effect to a case decided by the United States Supreme Court on Commerce Clause grounds.  The Commerce Clause does not implicate individual rights and civil liberties; it simply allocates power between the federal government and the states.  The court in *Bendix* ruled that Ohio has no power, under the Commerce Clause, to toll its statute of limitations against out-of-state entities.  The Ohio Constitution cannot be used, as the majority does today, to revive this unconstitutional statute; that is, our state constitution cannot be used to accomplish what the Commerce Clause forbids.  In a word, should the Supreme Court grant review we invite peremptory reversal.

III

**{¶ 39}** The United States Supreme Court has held that the retroactivity of federal constitutional decisions is a matter of federal law, and its holding in this regard is binding on the states under the Supremacy Clause. We are therefore obligated to apply the federal rules of retroactivity to the case before us, and the rule from *Harper* requires us to give retroactive effect to the *Bendix* decision. The majority disregards federal law and holds that *Bendix* may not be retroactively applied. Because I believe that we are not constitutionally permitted to do so, I respectfully dissent.

Moyer, C.J., concurs in the foregoing dissenting opinion.

_____