NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**BEDGEAR, LLC,**
*Appellant*

**v.**

**FREDMAN BROS. FURNITURE COMPANY, INC.,**
*Appellee*

———————————

2018-2082, 2018-2083, 2018-2084

———————————

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2017-00350, IPR2017-00351, IPR2017-00352.

———————————

Decided: November 7, 2019

———————————

K. LEE MARSHALL, Bryan Cave Leighton Paisner LLP, San Francisco, CA, argued for appellant. Also represented by JOSEPH J. RICHETTI, ALEXANDER DAVID WALDEN, New York, NY.

JASON R. MUDD, Erise IP, P.A., Overland Park, KS, argued for appellee. Also represented by ERIC ALLAN BURESH.

———————————

Before NEWMAN, DYK, and STOLL, *Circuit Judges.*

Opinion for the court filed PER CURIAM.

Opinion concurring in the judgment filed by *Circuit Judge* DYK, in which *Circuit Judge* NEWMAN joins.

PER CURIAM.

In its opening brief, Bedgear, LLC argues that the three final written decisions at issue in this appeal exceed the scope of the Patent Trial and Appeal Board's authority and violate the Constitution's Appointments Clause. *See* Appellant's Br. 66 (citing U.S. Const. art. II, § 2, cl. 2). This court recently decided this issue in *Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 18-2140 (Fed. Cir. Oct. 31, 2019). Accordingly, the Board's decisions in Nos. IPR2017-00350, IPR2017-00351, and IPR2017-00352 are vacated and the case is remanded to the Board for proceedings consistent with this court's decision in *Arthrex*.

**VACATED AND REMANDED**

COSTS

No costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BEDGEAR, LLC,**
*Appellant*

**v.**

**FREDMAN BROS. FURNITURE COMPANY, INC.,**
*Appellee*

---

2018-2082, 2018-2083, 2018-2084

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2017-00350, IPR2017-00351, IPR2017-00352.

---

DYK, *Circuit Judge*, with whom *Circuit Judge* NEWMAN joins, concurring in the judgment.

I agree that the panel here is bound to follow *Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 2018-2140, 2019 WL 5616010 (Fed. Cir. Oct. 31, 2019). But, even putting to one side the question of whether Administrative Patent Judges ("APJs") would have been improperly appointed (if not subject to at will removal), it seems to me that the remedy aspect of *Arthrex* (requiring a new hearing before a new panel) is not required by *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), imposes large and unnecessary burdens on the system of *inter partes* review, requiring potentially hundreds

of new proceedings, and involves unconstitutional prospective decision-making.

I

In *Arthrex,* the panel held that the appointment of Administrative Patent Judges ("APJs") would be unconstitutional if subject to the removal provisions of title 5. The panel avoids this result by holding that those removal provisions are unconstitutional as applied to APJs, and that the unconstitutional removal provision may be severed from the remainder of the statute "to render the APJs inferior officers and remedy the constitutional appointment problem." *Arthrex*, 2019 WL 5616010, at \*1. Instead of holding past actions by APJs valid, the *Arthrex* majority held those past actions invalid and remanded for a new hearing before a new panel "[b]ecause the Board's decision in this case was made by a panel of APJs that were not constitutionally appointed at the time the decision was rendered." *Arthrex*, 2019 WL 5616010, at \*11.

This holding is in part constitutional interpretation and part statutory construction. In essence, the panel improperly makes the application of its decision <u>prospective</u> only, so that only PTAB decisions <u>after</u> the date of the panel's opinion are rendered by a constitutionally appointed panel. In my view, the panel improperly declined to make its ruling retroactive so that the actions of APJs in the past were compliant with the constitution and the statute. In this respect, I think that the panel in *Arthrex* ignored governing Supreme Court authority.

II

I first address the *Arthrex* panel's claim that *Lucia* mandates remanding for a new hearing. In *Lucia,* the issue was whether Securities and Exchange Commission ("SEC") Administrative Law Judges ("ALJs") were inferior officers that had to be appointed by an agency head—the SEC. *Lucia,* 138 S. Ct. at 2051 & n.3 (2018). The Supreme

Court held that "[t]he Commission's ALJs are 'Officers of the United States,' subject to the Appointments Clause." *Id.* at 2055. The ALJs were found to be unconstitutionally appointed as "Officers of the United States" because they were appointed by "[o]ther staff members, rather than the Commission proper." *Id.* at 2046, 2051.

While the case was pending, "the SEC issued an order 'ratif[ying]' the prior appointments of its ALJs," thus curing the constitutional defect.[1] *Id.* at 2055 n.6 (alteration in original) (quoting SEC Order, *In re: Pending Administrative Proceedings* (Nov. 30, 2017), https://www.sec.gov/litigation/opinions/2017/33-10440.pdf). The Supreme Court nevertheless held that "the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." *Id.* at 2055 (quoting *Ryder v. United States*, 515 U.S. 183, 188 (1995)).

The difference between *Lucia* and *Arthrex* is that the fix in *Lucia* was an agency fix, whereas the fix in *Arthrex* is a judicial fix. Agencies and legislatures generally act only prospectively, while a judicial construction of a statute or a holding that a part of the statute is unconstitutional and construing the statute to permit severance are necessarily retrospective as well as prospective.

## III

As the Supreme Court concluded in *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298 (1994), "[i]n construing a statute, courts are 'explaining [their] understanding of what the statute has meant <u>continuously since the date when it became law</u>.'" *Id.* at 313 n.12 (emphasis added). The same is true as to constitutional decisions, as *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86 (1993) confirmed: "'[B]oth

---

[1]    The Court declined to decide whether the agency cured the defect when it "ratified" the appointments. *Lucia*, 138 S. Ct. at 2055 n.6.

the common law and our own decisions' have 'recognized a general rule of retrospective effect for the constitutional decisions of this Court.'" *Id.* at 94 (alteration in original) (quoting *Robinson v. Neil*, 409 U.S. 505, 507 (1973)). As Justice Scalia put it in his concurrence in the later *Reynoldsville* decision:

> In fact, what a court does with regard to an unconstitutional law is simply to <u>ignore</u> it. It decides the case "<u>disregarding the [unconstitutional] law</u>," *Marbury* v. *Madison*, 1 Cranch 137, 178 (1803) (emphasis added), because a law repugnant to the Constitution "is void, and is as no law," *Ex parte Siebold*, 100 U.S. 371, 376 (1880).

*Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760 (1995) (Scalia, J., concurring) (alterations in original). In other words, "[w]hen [a c]ourt applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the court's] announcement of the rule." *Harper*, 509 U.S. at 97 (1993).[2]

The requirement for retroactivity applies to remedies as well, such as the remedy in this case. In *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995), the Court reversed an Ohio Supreme Court decision declining to apply a constitutional decision as to a limitations period retroactively.

---

[2]    *Harper* overruled prior caselaw that provided for exceptions allowing prospective application of a new rule of law in constitutional and other cases. *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752 (1995) ("*Harper* overruled [a prior Supreme Court decision] insofar as the [prior] case (selectively) permitted the prospective-only application of a new rule of law.").

The Court rejected the respondent's argument that the Ohio Supreme Court's decision was based on "remedy" rather than "non-retroactivity" and held that accepting the Ohio Supreme Court's "remedy" would "create what amounts to an ad hoc exemption from retroactivity." *Id.* at 758. The Court noted only four circumstances where retroactive application of a constitutional ruling is not outcome-determinative.[3]    None is remotely relevant to *Arthrex*.

Thus, to be consistent with *Harper*, the statute here must be read as though the PTAB judges had always been constitutionally appointed, "disregarding" the unconstitutional removal provisions. *Marbury v. Madison*, 1 Cranch 137, 178, 2 L.Ed. 60 (1803). Since no Congressional or agency action is required in order to render the appointment of the PTAB judges constitutional, when the PTAB judges decided cases in the past, they did not act improperly. Thus, the past opinions rendered by the PTAB should be reviewed on the merits, not vacated for a new hearing before a different panel.

---

[3]    Namely, where there is: "(1) an alternative way of curing the constitutional violation, or (2) a previously existing, independent legal basis (having nothing to do with retroactivity) for denying relief, or (3) as in the law of qualified immunity, a well-established general legal rule that trumps the new rule of law, which general rule reflects both reliance interests and other significant policy justifications, or (4) a principle of law, such as that of 'finality' . . . , that limits the principle of retroactivity itself." *Reynoldsville*, 514 U.S. at 759.

IV

While the Circuits appear to be divided as to the retro-activity issue in Appointments Clause and similar cases,[4] the very Supreme Court decisions relied on in *Arthrex* have given retroactive effect to statutory constructions or constitutional decisions that remedied potential Appointment

---

[4] In *Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019), the en banc Fifth Circuit found that the Federal Housing Finance Agency ("FHFA") was unconstitutionally structured because Congress "[g]rant[ed] both removal protection and full agency leadership to a single FHFA Director." 938 F.3d at 591. It declined to invalidate prior agency actions. *Id.* at 592. It concluded that the only appropriate remedy, and one that "fixes the . . . purported injury," is a declaratory judgment "removing the 'for cause' provision found unconstitutional." *Id.* 595.

In *Intercollegiate Broadcasting* and *Kuretski*, the D.C. Circuit reached the opposite result. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332 (D.C. Cir. 2012); *Kuretski v. Comm'r*, 755 F.3d 929 (D.C. Cir. 2014). In *Intercollegiate Broadcasting*, the D.C. Circuit found that the appointments of the Copyright Royalty Judges in the Library of Congress violated the Appointments Clause because they could be removed only for cause. *Intercollegiate Broad. Sys., Inc.*, 684 F.3d at 1334. The court invalidated the for-cause restriction on the removal of the judges, rendering them "validly appointed inferior officers." *Id.* at 1340–41. Yet, the D.C. Circuit declared that "[b]ecause the Board's structure was unconstitutional at the time it issued its determination, we vacate and remand the determination." *Id.* at 1342. These two cases were not based on Supreme Court precedent, did not consider the Supreme Court precedent suggesting a different result, and were an apparent departure from the Court's rulings in similar circumstances.

Clause violations.  In *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010), the SEC's Public Company Accounting Oversight Board had instituted an investigation against an accounting firm, Beckstead and Watts ("B&W").  *Id.* at 487.  B&W and another affiliated organization, Free Enterprise Fund, filed suit, asking the district court to enjoin the investigation as improperly instituted because members of the Board had not been constitutionally appointed.  *Id.*  The Supreme Court found that the statutory removal protections afforded to members of the Board were unconstitutional.  *Id.* at 484. "By granting the Board executive power without the Executive's oversight [i.e., by limiting removal], this Act subverts the President's ability to ensure that the laws are faithfully executed—as well as the public's ability to pass judgment on his efforts." *Id.* at 498.  But the Court severed the unconstitutional removal provisions from the remainder of the statute, leaving the rest of relevant act fully operational and constitutional.  *Id.* at 509.

The Court did not view this action as fixing the problem only prospectively.  It refused to invalidate or enjoin the prior actions of the Board in instituting the investigation, explaining that "properly viewed, under the Constitution, . . . the Board members are inferior officers" and "have been validly appointed by the full Commission." *Id.* at 510, 513.  The Court remanded for further proceedings, but explained that Plaintiffs are only "entitled to declaratory relief sufficient to ensure that the reporting requirements and auditing standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* at 513.[5]

---

[5]    On remand, the parties agreed that the Supreme Court's decision did not require invalidating the Board's prior actions.  The agreed-upon judgment stated: "[a]ll relief not specifically granted by this judgment is hereby

So too in *Edmond,* past actions by the Coast Guard Court of Criminal Appeals were not set aside. The criminal defendants' convictions had been affirmed by the Coast Guard Court of Criminal Appeals. *Edmond v. United States,* 520 U.S. 651, 655 (1997). The defendants contended that the Coast Guard Court of Criminal Appeals judges had not been properly appointed, rendering the convictions invalid. *See id.* The issue was "whether Congress ha[d] authorized the Secretary of Transportation to appoint civilian [judges to] the Coast Guard Court of Criminal Appeals, and if so, whether this authorization [wa]s constitutional under the Appointments Clause of Article II [because the judges were inferior officers]." *Id.* at 653.

The Court construed the relevant statutes so that "Article 66(a) d[id] not give Judge Advocates General authority to appoint Court of Criminal Appeals judges; [and] that § 323(a) d[id] give the Secretary of Transportation authority to do so." *Id.* at 658. The Court explained that "no other way to interpret Article 66(a) that would make it consistent with the Constitution" because "Congress could not give the Judge Advocates General power to 'appoint' even inferior officers of the United States." *Id.* The Court then found that the judges of the Coast Guard Court of Criminal Appeals are inferior officers and that "[their] judicial appointments [by the Secretary] . . . are therefore valid." *Id.* at 666. Most significantly, the Court did not remand for a new hearing but rather "affirm[ed] the judgment of the Court of Appeals for the Armed Forces." *Id.* Nowhere did the Court suggest that the actions taken before the Court's construction were rendered invalid.

In Appointments Clause cases, the Supreme Court has required a new hearing only where the appointment's

---

DENIED." *See* Judgment Order, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,* C.A. No. 06-0217-JR (D.D.C. Feb. 23, 2011), ECF No. 66.

defect had not been cured[6] or where the cure was the result of non-judicial action.[7] The contrary decision in *Arthrex* is inconsistent with binding Supreme Court precedent and creates a host of problems in identifying the point in time when the appointments became valid.[8]

\*\*\*

---

[6]     *See Ryder v. United States*, 515 U.S. 177, 182–83 (1995) (declining to apply the *de facto officer* doctrine to preserve rulings made by an unconstitutionally appointed panel); *Nguyen v. United States*, 539 U.S. 69, 77, 83 (2003) (declining to leave "undisturbed" the judgments of an unconstitutionally composed panel); *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 519, 520 (2014) (affirming the DC Circuit in vacating an NLRB order finding a violation because the Board lacked a quorum as "the President lacked the power to make the [Board] recess appointments here at issue"); *see also Bandimere v. Sec. & Exch. Comm'n*, 844 F.3d 1168, 1171, 1188 (10th Cir. 2016) (setting aside opinion of an improperly appointed SEC ALJ where "the SEC conceded the ALJ had not been constitutionally appointed").

[7]     *See Lucia*, 138 S. Ct. at 2055 n.6; *see also Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 679 (6th Cir. 2018) (improperly appointed ALJ's decision vacated despite Mine Commission's attempt to cure the improper appointment during judicial review).

[8]     The difficulty of identifying at what point in time the appointments became effective is evident. Is it when then panel issues the decision, when the mandate issues, when en banc review is denied, when certiorari is denied, or (if there is an en banc proceeding) when the en banc court affirms the panel, or (if the Supreme Court grants review) when the Supreme Court affirms the court of appeals decision?

I respectfully suggest that *Arthrex* was wrongly decided on the issue of remedy. As a result of the *Arthrex* construction, APJs were properly appointed by the PTO Director/Under-Secretary of Commerce and their prior decisions are not invalid.