[Cite as *Dewine v. State Farm Ins. Co.*, 2020-Ohio-5517.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| Matthew Dewine, | : | Case No. 20CA3903 |
| Plaintiff-Appellant, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| State Farm Insurance Company, et al., | : | |
| | : | **RELEASED 11/23/2020** |
| Defendants-Appellees. | : | |
| | : | |

<u>APPEARANCES</u>:

Robert M. Johnson and Jeremy M. Burnside, Burnside Law, LLC, Portsmouth, Ohio, for appellant.

James L. Mann, Circleville, Ohio, for appellee.

Hess, J.

{¶1}   Matthew Dewine appeals the trial court's decision granting summary judgment in favor of Bryan Dewine on the ground that Matthew Dewine's action is barred by the statute of limitations. Matthew argues that the trial court erred because it failed to toll the statute of limitations during the time that Bryan was absent from the state of Ohio as required by R.C. 2305.15(A).

{¶2}   We find that the tolling provision in R.C. 2305.15(A) applies to Bryan's absence from Ohio. The plain language of the statute provides that the time of Bryan's absence from Ohio "shall not be computed as any part of a period within which the action must be brought." Bryan left Ohio and moved to Nevada because a woman he was dating lived there. Eventually he married her and found a job. Bryan was not engaged in commerce so as to implicate the Commerce Clause. Because the cause of action accrued

on April 3, 2016, Bryan was absent from Ohio from June 18, 2016 to August 8, 2018, and the lawsuit was filed on September 11, 2018, it was filed within the two-year statute of limitations of R.C. 2305.10. We sustain Matthew Dewine's assignment of error and reverse the trial court's judgment.

## I. PROCEDURAL HISTORY

{¶3}   On September 11, 2018, Matthew Dewine filed a complaint against his father Bryan Dewine and State Farm Insurance Company asserting a negligence claim against Bryan and an uninsured/underinsured and medical payments benefit claim against State Farm arising from a motor vehicle accident that occurred on April 3, 2016. Matthew alleged that Bryan negligently failed to maintain reasonable control of his vehicle and it ran off the roadway and collided with a guardrail, causing injuries to Matthew, a passenger in the vehicle.   Matthew voluntarily dismissed his claim against State Farm and the case proceeded solely against Bryan.

{¶4}   Bryan filed a motion for summary judgment, arguing that the two-year statute of limitations in R.C. 2305.10 governing personal injury claims barred Matthew's claim, which was filed approximately two years and five months after the accident. After the April 3, 2016 accident, Bryan left Ohio on June 18, 2016 and moved to Nevada, where he resided until he returned to Ohio on August 8, 2018. Bryan argued that the tolling provisions of R.C. 2305.15(A), which excludes the time period he was absent from Ohio from the statute of limitation calculation, was unconstitutional as applied to him. He argued that the United States Supreme Court examined Ohio's tolling provision in R.C. 2305.15(A) in *Bendix, infra,* and held that it violated the Commerce Clause of the United States Constitution by placing an impermissible burden on out-of-state corporations. The

effect of Ohio's tolling provision was to make an out-of-state corporation subject to suit in Ohio in perpetuity while an Ohio corporation is not. The Supreme Court held that to gain the protections of the statute of limitations, an out-of-state corporation would have to appoint a resident agent for service of process in Ohio and subject itself to the Ohio courts' general jurisdiction – a burden unjustified where Ohio's long-arm statute permits service on the foreign corporation. Bryan argued that the *Bendix* holding was extended beyond out-of-state corporations to out-of-state residents in *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995) and was further extended to Ohio residents who leave Ohio for employment in another state by *Tesar v. Hallas*, 738 F.Supp. 240 (N.D. Ohio 1990) (holding that a defamation action against an Ohio reporter who moved to Pennsylvania for employment was barred by the statute of limitations because the tolling provision in R.C. 2305.15(A) was unconstitutional as applied). Bryan argued that because he moved from Ohio to Nevada to get married and find other employment, the application of R.C. 2305.15(A) to toll the statute of limitations against him is similarly unconstitutional as applied.

{¶5}     Matthew opposed the motion and argued that the tolling provision in R.C. 2305.15(A) applies to Ohio residents who leave the state for non-business reasons, citing *Johnson v. Rhodes*, 89 Ohio St.3d 540, 2000-Ohio-235, 733 N.E.2d 1132. Because Bryan left the state to get married – not for business reasons, Matthew argued that the tolling provision did not violate the Commerce Clause in this instance. Matthew also cited a more recent decision by the Court of Appeals for the Sixth Circuit in which an Ohio doctor allegedly committed malpractice then left Ohio to retire in Florida. *See Garber v. Menendez*, 888 F.3d 839 (6th Cir. 2018). The Sixth Circuit held that the tolling provision

of R.C. 2305.15(A) as applied to Dr. Menendez, "does not impose a cost on a traditional interstate business transaction" and "does not lead to favoritism toward in-state firms over out-of-state ones." *Id.* at 846. The Sixth Circuit reversed the district court's decision holding the statute unconstitutional as applied to Dr. Menendez and instead held that the tolling provision applied to the time he was absent from Ohio.

{¶6} Here, the trial court reviewed the case law and found three general scenarios: (1) the defendant is not an Ohio resident at the time the cause accrued and left the state – in these cases the statute is not tolled; (2) the defendant is an Ohio resident at the time the cause accrued and then leaves the state indefinitely to take employment – in these cases the statute is not tolled; and (3) the defendant is an Ohio resident at the time the cause accrued and temporarily leaves the state – in these cases the statute is tolled for the time the resident is absent from the state. The trial court found that the key issue in each scenario is intent, "where a person leaves and has no intent to return, Ohio law says tolling does not apply." Because Bryan left Ohio and went to Nevada to marry, live, work, obtain a driver's license, and become a Nevada resident, the trial court found that there was no evidence that he had the intention of returning to Ohio. Therefore, the trial court held that the tolling provisions of R.C. 2305.15(A) were inapplicable to Bryan, granted him summary judgment, and dismissed Matthew's complaint as barred by the statute of limitations.

## II. ASSIGNMENT OF ERROR

{¶7} Matthew assigns the following error for our review:

The Trial Court erred in granting summary judgment in favor of Appellee Bryan Dewine because it failed to adhere to Section 2305.15 of the Ohio Revised Code.

## III. LAW AND ANALYSIS

{¶8}   Matthew contends that the trial court erred when it failed to apply the tolling provision of R.C. 2305.15(A) to the time Bryan was absent from Ohio. He argues that the plain language of the statute is unambiguous and provides, "if the person departs from the state * * * the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought." Matthew argues that the trial court did not address the Sixth Circuit's decision in *Garber, supra*, which is the highest federal authority on the matter. Matthew also argues that the trial court improperly added "intent" as an element to R.C. 2305.15 even though there is no distinction in the statute between absences "intended" to be permanent and those "intended" to be temporary.

{¶9}   Bryan takes a cautiously critical view of the Sixth Circuit's analysis in *Garber,* pointing to the Court's failure to include *Reynoldsville Casket, supra*, in its analysis and urges us to affirm the trial court's judgment under federal law as set forth in *Bendix, Reynoldsville Casket,* and *Tesar.*

### A. Standard of Review

{¶10} We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long–Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

**{¶11}** Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264 (1996). To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293, 662 N.E.2d 264. Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 4th Dist. Pickaway No. 11CA25, 2012-Ohio-3150, ¶ 17; *Wagner v. Young*, 4th Dist. Athens No. CA1435, 1990 WL 119247, *4 (Aug. 8, 1990). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Dresher* at 293, 662 N.E.2d 264; Civ.R. 56(E); *Am. Express Bank, FSB v. Olsman*, 2018-Ohio-481, 105 N.E.3d 369, ¶ 10-11 (4th Dist.).

## B. Legal Analysis

{¶12} Personal injury actions are governed by a two-year statute of limitations. R.C. 2305.10. Unless the statute is tolled, Matthew's action is barred by the applicable statute of limitations. Matthew argues that the tolling provision in R.C. 2305.15(A) applies and that his action is timely.  That provision states, in relevant part:

> R.C. 2305.15 Saving clause; time tolled during imprisonment
>
> (A) When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, 1302.98, and 1304.35 of the Revised Code does not begin to run until the person comes into the state or while the person is so absconded or concealed. After the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought.

{¶13} Historically, the tolling provision in R.C. 2305.15 applied to persons who were never residents of Ohio and persons who were residents at the time of the event giving rise to the cause of action. *Seeley v. Expert, Inc.,* 26 Ohio St.2d 61, 269 N.E.2d 121 (1971) citing *Meerison v. Groschner,* 153 Ohio St 301, 91 N.E.2d 680 (1950) and *Chamberlain v. Lowe*, 252 F.2d 563 (6th Cir. 1958). The tolling provision also applied regardless of whether the nonresident was amenable to process under the long-arm statute or some other method. *Id.* at 69-70.

> [A] majority of the states, with comparable 'savings clause' statutes, have taken the view that the statute of limitations is not tolled under circumstances of amenability to process. Their position presents a very persuasive argument for change in the existing Ohio law in such respect. We conclude, however, that a change of the law by court 'interpretation' at this time would be violative of the basic rules of statutory interpretation.
>
> While the developments of the now accepted principles of substituted service under nonresident (and concealed) motorists statutes, and the advent of the 'long-arm' statutes may have eliminated much of the need for a 'savings clause,' it must be recognized that a court, in interpreting a

legislative enactment, may not simply rewrite it on the basis that it is thereby improving the law.

*Id.* at 71.

**{¶14}** The tolling provision does not contain an exception for temporary absences from the state – the statute applies equally to both permanent and temporary absences. *Wetzel v. Weyant*, 41 Ohio St.2d 135, 323 N.E.2d 711 (1975) (the tolling provision applied where defendant was absent from Ohio for several weeks over the course of several years to vacation in Wisconsin, Michigan, and Florida); *Johnson v. Rhodes*, 89 Ohio St.3d 540, 2000-Ohio-235, 733 N.E.2d 1132 (Cook, J., concurring opinion, "R.C. 2305.15 does not distinguish between the 'types' of absences, and continued use of the word 'temporary' could be read to *limit* the application of the tolling statute." (Emphasis sic.)).

**{¶15}** The tolling provision in R.C. 2305.15(A) was held unconstitutional as applied in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988). *Bendix* involved a contract dispute between Bendix, a Delaware corporation with its principal place of business in Ohio, and Midwesco, an Illinois corporation with its principal place of business in Illinois. A four-year statute of limitations governed the dispute but Bendix argued it was tolled by R.C. 2305.15(A). Midwesco argued that the tolling provision violated the Commerce Clause and the Due Process Clause of the Fourteenth Amendment. The United States District Court for the Northern District of Ohio dismissed the action, finding that the tolling statute impermissibly burdened interstate commerce. The Court of Appeals for the Sixth District affirmed because "it required a foreign corporation to choose between ' "exposing itself to personal jurisdiction in [state] courts by complying with the tolling statute, or, by refusing to comply,

to remain liable in perpetuity for all lawsuits containing state causes of action filed against

it in [the State].” ’ ” (Brackets sic.) *Bendix* at 890.

{¶16}  The United States Supreme Court found that the tolling provision subjected

out-of-state corporations to a significant burden:

> The Ohio statutory scheme thus forces a foreign corporation to choose
> between exposure to the general jurisdiction of Ohio courts or forfeiture of
> the limitations defense, remaining subject to suit in Ohio in perpetuity.
> Requiring a foreign corporation to appoint an agent for service in all cases
> and to defend itself with reference to all transactions, including those in
> which it did not have the minimum contacts necessary for supporting
> personal jurisdiction, is a significant burden.

*Bendix Autolite Corp.* at 893. Next, the Court weighed, “the State’s putative interests

against the interstate restraints to determine if the burden imposed is an unreasonable

one.” *Id.* at 891. The Court concluded that the burden was unreasonable:

> The ability to execute service of process on foreign corporations and entities
> is an important factor to consider in assessing the local interest in subjecting
> out-of-state entities to requirements more onerous than those imposed on
> domestic parties. It is true that serving foreign corporate defendants may be
> more arduous than serving domestic corporations or foreign corporations
> with a designated agent for service, and we have held for equal protection
> purposes that a State rationally may make adjustments for this difference
> by curtailing limitations protection for absent foreign corporations.
> Nevertheless, state interests that are legitimate for equal protection or due
> process purposes may be insufficient to withstand Commerce Clause
> scrutiny.
>
> In the particular case before us, the Ohio tolling statute must fall under the
> Commerce Clause. Ohio cannot justify its statute as a means of protecting
> its residents from corporations who become liable for acts done within the
> State but later withdraw from the jurisdiction, for it is conceded by all parties
> that the Ohio long-arm statute would have permitted service on Midwesco
> throughout the period of limitations. The Ohio statute of limitations is tolled
> only for those foreign corporations that do not subject themselves to the
> general jurisdiction of Ohio courts. In this manner the Ohio statute imposes
> a greater burden on out-of-state companies than it does on Ohio
> companies, subjecting the activities of foreign and domestic corporations to
> inconsistent regulations.

*Bendix Autolite Corp.* at 893–94.

{¶17} In *Reynoldsville Casket Co. v. Hyde,* 514 U.S. 749, 115 St.Ct. 1745, 131 L.Ed.2d 820 (1995), the United States Supreme Court held that its decision in *Bendix* applied to pre-*Bendix* tort claims. It reversed the Ohio Supreme Court's decision that held that *Bendix* does not apply retroactively to bar claims in state courts which had accrued before the *Bendix* decision issued. *See Hyde v. Reynoldsville Casket Co.*, 68 Ohio St.3d 240, 1994-Ohio-67, 626 N.E.2d 75 (1994). Hyde sued both the Reynoldsville Casket, a foreign corporation, and John Blosh, an employee of Reynoldsville Casket who was involved in a collision with Hyde while in the scope of his employment. The complaint alleged that Blosh had negligently caused Hyde's injuries and contended that because, " 'Blosh's actions were in the scope and course of his employment with the [Reynoldsville] Casket Co.,' RCC was also liable for those injuries." (Brackets sic.) *Hyde v. Reynoldsville Casket Co.*, 68 Ohio St.3d 240, 241, 1994-Ohio-67, 626 N.E.2d 75 (1994). The trial court dismissed Hyde's claims as barred by the statute of limitations and the Eleventh District Court of Appeals affirmed the dismissal. The Court of Appeals applied *Bendix* to Hyde's claims, finding no distinction between the facts in *Bendix* and those before it. In discussing employee Blosh, the appellate court found, "Blosh, as an employee of Reynoldsville Casket Co., was involved in interstate commerce. Moreover, as an individual, he did not even have the option of registering with the Secretary of State. An individual engaged in interstate commerce should be afforded the same protection and defenses as a corporation." (Citations omitted.) *Hyde v. Reynoldsville Casket Co.*, 11th Dist. Ashtabula No. 91-A-1660, 1992 WL 192332, *3 (June 30, 1992). The Ohio Supreme Court reversed the Eleventh District, but then itself was reversed by the United States Supreme Court.

{¶18} After *Bendix* and *Reynoldsville Casket*, we issued *Johnson v. Rhodes*, 4th Dist. Washington No. 98CA26, 1999 WL 595385 (July 23, 1999), *rev'd,* 89 Ohio St.3d 540, 2000-Ohio-235, 733 N.E.2d 1132,  in which we adopted the reasoning of the First District Court of Appeals in *Simpson v. Neidlinger*, 1st Dist. Hamilton No. C-950649, 1996 WL 656357 (Nov. 13, 1996). We found that the tolling provision of R.C. 2305.15(A) was unconstitutional as applied to an Ohio resident who is absent from the state on vacation and other non-business personal reasons. We found that commerce includes, "those who offer services to interstate vacationers." *Id.* at *3.

{¶19} A few years after *Simpson,* the First District held, "We perceive the holding of *Bendix* has narrowly limited the application of R.C. 2305.15(A) so that the portion of the statute dealing with an out-of-state person is no longer constitutionally valid*."* *Permanent Gen. Ins. Cos., Inc. v. Dressler*, 130 Ohio App.3d 628, 631, 720 N.E.2d 959 (1st Dist. 1998). The First District judicially amended the language of R.C. 2305.15(A) to limit its application to those who abscond or conceal themselves out of state:

> We believe that a defendant should not be precluded from using the statute-of-limitations defense where his absences have not affected the plaintiff's ability to file an action against him in a timely manner. R.C. 2305.15 was not meant to reward a dilatory plaintiff by extending the time in which to file a complaint because a defendant vacationed out of state, enjoyed out-of-state restaurants, visited relatives out of state, or participated in a myriad of out-of-state activities. The statute was meant to avoid the loss of a meritorious claim because a diligent plaintiff was prevented from timely bringing an action because a defendant absconded or concealed himself to avoid service of process. There is nothing in the record to indicate Dressler had absconded or concealed his whereabouts.
>
> Further, even if the portion of the statute dealing with out-of-state persons applied, there is nothing in the record to demonstrate that Dressler was out of state to avoid service of process. "If a defendant is amenable to service of process during that time period for R.C. 2305.15(A) purposes, that defendant is present in the state."

*Id.* at 632, quoting *Jones v. St. Anthony Med. Ctr.*, 10th Dist. Franklin No. 95APE08-1014, 1996 WL 70997, *7, citing *Thompson v. Horvath*, 10 Ohio St.2d 247, 251, 227 N.E.2d 225 (1967) ("a defendant is present under the savings statute when it can be made to answer to the claims of the plaintiff. Since the defendant corporation was amenable to process during the period of the statute of limitations, it was present in the state, the savings statute is inapplicable, and the statute of limitations is properly available as a defense"). The First District noted that, since *Bendix*, Ohio appellate courts have inconsistently interpreted R.C. 2305.15, with some courts finding it unconstitutional as it applies to absences from the state for employment purposes and others continuing to apply a literal interpretation. *Id.* at 631, fn. 6, 7.

**{¶20}** The Supreme Court of Ohio determined that a conflict existed between our decision in *Johnson*, two Ninth District cases, and a Second District case. *See Johnson v. Rhodes,* 87 Ohio St.3d 1477, 721 N.E.2d 1477 (1999) ("The conflict cases are *Brown v. Lavery* (1993), 87 Ohio App.3d 745, 622 N.E.2d 1179; *Gehr v. Elden* (July 8, 1992), Lorain App. No. 91CA005192, unreported, 1992 WL 161393; and *Hoagland v. Webb* (June 3, 1994), Montgomery App. Nos. 14024 and 14061, unreported, 1994 WL 237504"). In *Gehr v. Elden, supra,* the Ninth District held that the tolling provision of R.C. 2305.15(A) applied "to brief absences taken for business or recreation" where the defendant had admitted to being absent from Ohio for "some nineteen weeks during the two years following the incident." *Id.* at *1. In *Brown v. Lavery, supra,* the defendant was absent from Ohio for at least 198 days while attending college. Citing *Wetzel v. Weyant, supra,* the Ninth District held that the "statute unambiguously provides that when a party departs from the state, the time of his absence *shall not* be computed as part of the statutory

period." (Emphasis sic.) *Brown* at 747. Neither *Gehr* nor *Brown* involved an analysis of the Commerce Clause or the burdens that R.C. 2305.15(A) might place on interstate commerce.

**{¶21}** However, the Second District's decision in *Hoagland v. Webb, supra,* involved an analysis of *Bendix* in the context of an employee, Webb, who was employed by a company that sold conveyor systems in interstate commerce. Webb was employed as a field supervisor and travelled extensively as part of his employment to install conveyors in Illinois, Kentucky, and Indiana. The appellate court found that Webb's employer was involved in interstate commerce and that Webb, "by traveling in the course of his employment, was also engaged in interstate commerce."  Because the Commerce Clause was implicated, the appellate court conducted a balancing test to determine if the tolling provision placed an impermissible burden on interstate commerce. It found:

> Individuals whose job descriptions mandate frequent interstate travel would have to choose between keeping their jobs and forfeiting the statute of limitations protection. Employers whose businesses require interstate travel, and who wish to keep their employees who are subject to suit, would incur increased business expenses as they would have to either change the job descriptions of those employees so that they would not be required to leave the state or terminate those employees and pay for the recruitment and training of new employees to take their place.

*Hoagland v. Webb,* 2d Dist. Montgomery No. 14024, 1994 WL 237504, *4 (June 3, 1994). When compared to the relative ease with which Webb, as an Ohio resident, could have been served by simple certified mail, the appellate court found "far less justification for the tolling of the statute of limitations period." *Id.* at *5. The Second District held:

> We must conclude that that portion of R.C. 2305.15(A) which mandates automatic tolling of the statute of limitations period for persons who travel interstate in the course of their employment is an impermissible burden on interstate commerce. Therefore, R.C. 2305.15(A), as it applies to Webb, constitutes an unconstitutional violation of the commerce clause and cannot

be applied to toll the statute of limitations period during those times when
Webb was out of state on business.

*Id.; see also Lovejoy v. Macek,* 122 Ohio App.3d 558, 564, 702 N.E.2d 457 (11th Dist.)

("we are most persuaded by the analysis used by the Second District Court of Appeals in

*Hoagland* * * * vacation trips do not rise to the level of acts engaging interstate

commerce"); *Johnson v. Rhodes*, 4th Dist. Washington No. 98CA26, 1999 WL 595385,

*4 (July 23, 1999) (Abele, J., dissenting, "I agree with the views expressed in *Hoagland*

*v. Webb* * * * until the Ohio General Assembly amends the statute's language, or until the

Ohio Supreme Court chooses to reconsider the issue, courts should apply the literal

interpretation of the statute.").

{¶22} Approximately six months after our decision in *Johnson v. Rhodes*, the

Tenth District Court of Appeals issued *Gallo v. Trakas*, 10th Dist. Franklin No. 99AP-513,

2000 WL 28846 (Jan. 13, 2000) in which the defendant Denise Trakas had left Ohio for

three days[1] and the appellate court held, "The Supreme Court of Ohio has clearly ruled

that such absences from the state toll the statute of limitations." *Id.* at *1. The Tenth

District limited the holding in *Bendix,* "to those circumstances where the effect of the

statute is to permanently toll the statute of limitations. The statute can be viewed as a

burden on interstate commerce when it makes foreign corporations permanently liable to

being sued in the courts of Ohio. R.C. 2305.15(A) does not burden interstate commerce

when it extends a statute of limitation for a reasonable period of time due to a temporary

absence of the party to be sued." *Id.* at *2.

---

[1] The decision does not state whether she left for business or pleasure, but Gallo characterized it as
"vacation" in his assignment of error.

**{¶23}** The Supreme Court of Ohio, in addition to the conflicts in the Second and Ninth Districts, certified a conflict between the Tenth District's decision in *Gallo v. Trakas* and our decision in *Johnson v. Rhodes* and ultimately reversed our decision in *Johnson* and affirmed *Gallo. Gallo v. Trakas*, 88 Ohio St.3d 1514, 728 N.E.2d 402 (certifying conflict); *Johnson v. Rhodes*, 89 Ohio St.3d 540, 2000-Ohio-235, 733 N.E.2d 1132 (reversing *Johnson,* 4th Dist. Washington No. 98CA26, 1999 WL 595385 (July 23, 1999)).

**{¶24}** In *Johnson,* the Supreme Court of Ohio held that R.C. 2305.15(A) tolls the statute of limitations when an individual is absent from Ohio for non-business reasons. The Court limited *Bendix* to its facts, "the decision of the court in *Bendix* operates to preclude the application of R.C. 2305.15 against out-of-state corporations that have not appointed an agent for service of process in the state of Ohio. However, the decision stops far short of declaring R.C. 2305.15 unconstitutional in any other application." *Johnson* at 542. The Court found, "the application of R.C. 2305.15 to individuals * * * who temporarily leave the state of Ohio for non-business reasons, imposes no such impermissible burden." In the concurring opinion, Justice Cook clarified that the term "temporary" was used only to underscore that the tolling statute applies equally to permanent and temporary absences and that the qualifying phrase "non-business reasons" likewise does not appear in R.C. 2305.15 – it is a term used by the majority as a phrase "to meet *Bendix.*"

**{¶25}** Since the Ohio Supreme Court's decision in *Johnson v. Rhodes*, our Court analyzed R.C. 2305.15(A) and held that "under *Bendix,* R.C. 2305.15(A) is unconstitutional as applied to * * * a person who never has been a resident of Ohio." *Ruble v. Ream,* 4th Dist. Washington No. 03CA14, 2003-Ohio-5969, ¶ 24*; see also Ward*

*v. Graue,* 2013-Ohio-1107, 987 N.E.2d 760, ¶ 20 (12th Dist.) (Graue, a resident of Kentucky employed by and driving a UPS delivery truck frequently across state lines, was not subject to the tolling provision in R.C. 2305.15(A) because he was never a resident of Ohio and was in Ohio for purposes of interstate commerce); *Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 44 (2d Dist.) (Bartsch was a resident of Virginia, not Ohio, and therefore R.C. 2305.15(A) was unconstitutional as applied to him).

**{¶26}** Both Matthew and Bryan urge us to consider federal case law in analyzing the application of the tolling provision in R.C. 2305.15(A).  While we are bound by the decisions issued by the Supreme Court of the United States, we are not bound by lower federal court decisions. *See State v. Burnett*, 93 Ohio St.3d 419, 423, 2001-Ohio-1581, 755 N.E.2d 857, citing *State v. Glover*, 60 Ohio App.2d 283, 287, 396 N.E.2d 1064 (1st Dist.1978) ("We would first make the observation that, although we hold the United States Sixth Circuit Court of Appeals in high regard and we find their decisions to be most persuasive, we are not bound to follow the holdings that they articulate"); *State ex rel. Yost v. Volkswagen Aktiengesellschaft,* 137 N.E.3d 1267, 2019-Ohio-5084, ¶ 30 (10th Dist.) (Ohio courts are not bound by decision of a federal court other than the United States Supreme Court "but we are free to consider the persuasiveness of such decisions").

**{¶27}** We find that *Johnson, Bendix* and *Reynoldsville Casket* provide sufficient binding authority for us to fully analyze whether R.C. 2305.15(A) tolls the statute of limitations here. According to the affidavit Bryan submitted in support of his summary judgment motion, Bryan was a resident of Ohio on the date of the accident.  When he left

Ohio to move to Nevada, he did so "because a woman that I was dating had a home there. While I was living in Nevada, I married my wife and found employment in the State of Nevada."  Because it is undisputed that Matthew knew Bryan had moved to Nevada, the "abscond or concealment" provisions of the tolling statute are inapplicable here.

**{¶28}**  Under *Johnson,* the plain language of R.C. 2305.15(A) provides that "when a person 'departs from the state * * *, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought.' " *Johnson* at 542. Therefore, the limitations period in R.C. 2305.10 was tolled by Bryan's absence from Ohio unless R.C. 2305.15(A) is unconstitutional as applied to him. In his summary judgment motion, Bryan argued that R.C. 2305.15(A) is unconstitutional as applied to him because "he moved his residence to the State of Nevada for the purposes of marrying his wife and to find other employment." In his reply in support of summary judgment, Bryan asserted that it was his decision to permanently relocate to Nevada that makes the tolling provision unconstitutional, "Once he was no longer a resident of the state of Ohio, the application of R.C. 2305.15(A) to him was unconstitutional."

**{¶29}**  However, we have found no case law that supports his argument that by simply moving out of state and establishing residence elsewhere, the tolling provision is rendered unconstitutional. An individual's relocation from Ohio to another state does not, alone, trigger a Commerce Clause analysis. Rather, the issue as identified in *Bendix* and *Reynoldsville Casket*, and as construed in *Johnson*, is whether the statute as applied to Bryan places a burden on interstate commerce. And, if so, can it be justified as a means of protecting Ohio residents.

{¶30} For R.C. 2305.15(A) to be unconstitutional as applied to Bryan we must determine whether Bryan was "engaged in commerce" so as to implicate the Commerce Clause. Bryan departed from the state to pursue a romantic interest in Nevada. Eventually he married and found a job. Bryan was neither a foreign corporation engaged in interstate commerce like the defendant in *Bendix*, nor an out-of-state employee of a foreign corporation like the individual defendant in *Reynoldsville Casket.* Unlike Webb, Bryan was not employed by a company that required him to travel extensively out of state to fulfill his job obligations. *See Hoagland v. Webb*, 2d Dist. Montgomery Nos. 14024,14061, 1994 WL 237504 (June 3, 1994).

{¶31} Bryan argues that under *Tesar v. Hallas,* 738 F.Supp. 240 (N.D.Ohio 1990), the application of R.C. 2305.15(A) is unconstitutional as applied to him. He contends that under *Tesar,* the "movement of individuals falls within the Commerce Clause" and interstate commerce is affected when persons move between states in the course of or in search for employment. *Id.* at 242. However, as we stated previously, federal court cases are not binding on us. And, *Tesar* can be readily distinguished here where Bryan moved for romance, not employment. To the extent we consider federal cases for their persuasiveness, we find far more persuasive the Sixth Circuit's analysis in *Garber v. Menendez,* 888 F.3d 839 (2018). There an Ohio physician retired and relocated to Florida. The United States District Court for the Northern District of Ohio – which was reversed by the Sixth Circuit – found that "the decision to permanently leave Ohio for Florida does implicate the Commerce Clause." *Garber v. Menendez,* Case No 1:17 CV 1214, 2017 WL 3705875, *3 (N.D.Ohio Aug. 28, 2017) *rev.d,* 888 F.3d 829. Because the district court found that the tolling provision in R.C. 2305.15(A) implicated interstate commerce, it

analyzed whether the burden it places on commerce is impermissible and found that it was because it, "prevents individuals from permanent transport across state lines unless the individual waits until the statute of limitation has expired." *Id.* The statute was not justified because there was, "no indication that [Dr. Menendez] could not be served via Ohio's long arm statute." *Id.*

**{¶32}** The Sixth Circuit reversed. It explained that historically states could not compel an out-of-state party to respond to a lawsuit. As a result, defendants could commit wrongs and leave the state until the statute of limitation expired. States responded by implementing tolling statutes. *Garber v. Menendez*, 888 F.3d 839, 841 (2018). Eventually laws evolved and states enacted long-arm statutes that allowed parties to file suits against out-of-state defendants. Some legislatures amended their tolling statutes to apply only if the long-arm statute did not. Ohio "did not alter their tolling statutes, whether via amendment or interpretation. The tolling laws of Ohio thus work today the way they always have worked." *Id.* at 842.

**{¶33}** The Sixth Circuit examined Commerce Clause jurisprudence and noted that review of state laws under the Commerce Clause looks at unconstitutional "economic protectionism," either explicit discrimination or laws that appear neutral but have "an impermissibly protectionist purpose or effect." *Id.* at 843. It found that Ohio's tolling provision in R.C. 2305.15(A) "clears each of these hurdles."

> Dr. Menendez does not claim that the law explicitly discriminates against interstate commerce. For good reason. On its face, the tolling statute bears none of the hallmarks of facial discrimination. It draws no distinctions based on residency. The law applies to an Ohio resident who commits a tort in Ohio just as it applies to a Michigan resident who does the same. *Johnson v. Rhodes*, 89 Ohio St.3d 540, 733 N.E.2d 1132, 1133 (Ohio 2000); Ohio Rev. Code § 2305.15. And it does not distinguish between interstate transactions and intrastate transactions. The tolling statute applies

regardless of where the underlying lawsuit arises. *See Seeley*, 269 N.E.2d at 123.

The law, it is true, by its nature will affect out-of-state residents more often than in-state ones. But that reality does not establish a cognizable form of discrimination if the statute otherwise treats similarly situated in-state and out-of-state entities the same. *General Motors Corp. v. Tracy*, 519 U.S. 278, 298–99, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997); *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 88, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987); *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471–72, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (rejecting a claim of discrimination because the challenged statute "regulate[d] evenhandedly ... without regard to whether the [commerce came] from outside the State"). Ohio tolls the statute of limitations for a defendant outside of the State regardless of whether he once resided in Ohio or not.

*Garber v. Menendez*, 888 F.3d 839, 843 (6th Cir.2018), *cert. denied,* 139 S.Ct. 1261, 203

L.Ed.2d 276 (2019).

**{¶34}** The Sixth Circuit found Ohio's tolling statute to be one of the policy choices

that provides benefits to residents. "But the States' ability to attract and retain residents

through policy choices has long been considered a healthy byproduct of the laboratories

of democracy in our federalism-based system of government, not a sign of

unconstitutional protectionism." *Id.* at 844. The Court explained that the type of cases that

violate the Commerce Clause are those where " 'the State interfered with the natural

functioning of the interstate market either through prohibition or through burdensome

regulation.' " *Id.* quoting *McBurney v. Young,* 569 U.S. 221, 235, 133 S.Ct. 1709, 185

L.Ed.2d 758 (2013). The tolling provision of R.C. 2305.15(A) as applied to the statute of

limitations is not the type of case that fits within the " 'common thread' of the court's

dormant Commerce Clause." *Id.* at 845.

**{¶35}** The Court rejected the argument that *Bendix* requires the Court to invalidate

the tolling provision. It explained that the *Bendix* decision involved a foreign corporation

and the tolling provision "forced out-of-state companies like Midwesco to face liability indefinitely as a cost of doing business across state lines. The Court held that this favoritism imposed a 'significant' burden on interstate commerce that, measured by *Pike* balancing, outweighed any local benefit of the law." (Citations omitted.) *Id.* at 846. The Court found that the tolling statute did not, "impose a cost on a traditional interstate business transaction in the same way" to Dr. Menendez. Dr. Menendez lived in Ohio and treated an Ohio resident in Ohio. "The application of the statute does not lead to favoritism toward in-state firms over out-of-state ones. It merely creates a benefit for residents of Ohio." *Id.*

**{¶36}** The Sixth Circuit reversed the district court's decision. For purposes of the tolling provision in R.C. 2305.15(A), an Ohio resident's decision to permanently leave Ohio to move to another state does not implicate the Commerce Clause, nor does the statute ban travel or prevent individuals from permanent transport across state lines. *Id.* at 845 (as for any "travel ban," the Court rejected Dr. Menendez's speculative argument that R.C. 2305.15(A) "dissuaded many Ohio doctors from retiring to Florida" and instead found that "the North to South traffic on Interstate 75, we suspect, provides a long proof to the contrary, and the invalidation of this tolling provision, we also suspect, would not hasten that traffic").  Like Dr. Menendez, Bryan left Ohio to live permanently in another state. His move did not implicate the Commerce Clause.

**{¶37}** We find that although the trial court's decision here was a thoughtful and considered one, it erred in deciding that the tolling provision in R.C. 2305.15(A) did not apply to Bryan's absence from Ohio. The plain language of the statute provides that the time of Bryan's absence from Ohio shall not be computed as any part of a period within

which the action must be brought. Bryan was absent from Ohio to pursue romance in Nevada. Eventually he married and found a job there. Bryan was not engaged in commerce so as to implicate the Commerce Clause. Because the cause of action accrued on April 3, 2016, Bryan was absent from Ohio from June 18, 2016 to August 8, 2018, and the lawsuit was filed on September 11, 2018, it was filed well within the two-year statute of limitations of R.C. 2305.10. We sustain Matthew Dewine's assignment of error and reverse the judgment.

IV. CONCLUSION

**{¶38}** We sustain Matthew Dewine's assignment of error, reverse the judgment of the trial court, and remand for further proceedings consistent herewith.

JUDGMENT REVERSED.

CAUSE REMANDED.

Abele, J., dissenting:

**{¶39}** I respectfully dissent. Although I readily acknowledge that the principal opinion is well-reasoned and sets forth a detailed chronology of all pertinent cases on this topic, I believe we should follow applicable Ohio Supreme Court authority until instructed to do otherwise.

**{¶40}** In the case sub judice, on April 3, 2016 Defendant-Appellee Bryan Dewine (Bryan) operated a pick-up truck and struck a guardrail. Bryan's son and passenger, Plaintiff-Appellant Matthew Dewine (Matthew), sustained injuries. At that time, both father and son resided in Ohio. On June 18, 2016, Bryan relocated to Nevada and obtained employment, a Nevada driver's license, a spouse and a permanent address at his spouse's home.

**{¶41}** On August 8, 2018, Bryan returned to Ohio and resided with Matthew. At this time, Bryan was served with a copy of the complaint in this action. Shortly thereafter, Bryan requested summary judgment based upon the expiration of the statute of limitations. Matthew, however, asserted that Ohio's tolling statute, R.C. 2305.15, tolls the statute of limitations when a defendant is out-of-state.

**{¶42}** After consideration, the trial court determined that the tolling statute did not apply in this case because at no time did Bryan conceal his whereabouts. As the court pointed out, Bryan openly married, lived, worked, obtained a Nevada driver's license and became a permanent Nevada resident. The court did note, however, that if Bryan had temporarily left Ohio, the statute of limitations would toll during Bryan's absence. In its decision, the trial court relied on *Johnson v. Rhodes*, 89 Ohio St.3d 540, 2000-Ohio-235, 733 N.E.2d 1132, which held that the R.C. 2305.10 limitations period is tolled when an individual temporarily leaves the state of Ohio (and for non-business reasons). See, also, *Wetzel v. Weyant* (1975), 41 Ohio St.2d 135, 323 N.E.2d 711. Thus, the trial court determined that, because Bryan had permanently moved to Nevada and Matthew knew this fact, the tolling statute should not apply in the case at bar. Rather, the tolling statute should apply to individuals who temporarily leave Ohio for non-business purposes.

**{¶43}** After my review, I believe that in the case sub judice the trial court correctly interpreted and followed the applicable controlling authority. In general, the tolling statute is intended for situations when a diligent plaintiff cannot bring an action because a defendant absconded or concealed herself or himself in order to avoid service of process. That is not the situation currently before us, however. Instead, here Matthew openly resided in Nevada as a permanent resident and within reach of Ohio's long-arm

jurisdiction.[2]   To hold otherwise could result in an endless tolling of the statute of limitations, a situation that the *Johnson* court apparently wished to avoid.

**{¶44}**  Accordingly, in light of the foregoing, I believe that the trial court correctly concluded that the tolling statute should apply only to temporary absences rather than to a permanent change of residence, and, thus, should not apply in the case at bar.

---

[2] See, e.g., Civ.R. 4.3(A)(3) (service of process may be made outside this state * * * in any action in this state upon a person who * * * is a nonresident of this state.  "Person" includes an individual * * * who * * * causing tortious injury * * * arising out of the ownership, operation, or use of a motor vehicle or aircraft in this state.)

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the SCIOTO COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J.: Concurs in Judgment and Opinion.
Abele, J.:  Dissents with Dissenting Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**